UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Lucille Dumas, | CASE NO.:  1: 16 CV 81 |
| Plaintiff(s), | JUDGE DONALD C. NUGENT |
| vs. | |
| Madeline Chappell, et al., | **DEFENDANT MADELINE CHAPPELL'S ANSWER AND CROSS-CLAIM FOR INDEMNIFICATION AND COUNTERCLAIM FOR WRONGFUL DISCHARGE** |
| Defendant(s). | |
| | **Jury Demand Endorsed Hereon** |

## ANSWER

Now comes Defendant Madeline Chappell, by and through counsel, and for her Answer to Plaintiff's Complaint states and alleges as follows:

1. Defendant denies the truth of the allegations set forth in paragraphs 1-3, 9-27, 32-39, 44-46, 49-50, 52-59, 62-66 of Plaintiff's Complaint.

2. Defendant denies paragraph 4 of the Plaintiff's Complaint for want of knowledge sufficient to form a belief.

3. Defendant admits she was a Corrections Officer with the Sheriff's Department but denies the remainder of the allegations in paragraph 5 of Plaintiff's Complaint.

4. Defendant admits that she worked for Cuyahoga County at the time of the alleged incident, such that if found liable, Defendant is entitled to contribution and

indemnification from Defendant Cuyahoga County. Defendant further denies the remainder of the allegations in paragraph 6 of Plaintiff's Complaint.

5. Defendant admits that the alleged incident occurred in Cuyahoga County, but further denies the remainder of the allegations in paragraph 7 of Plaintiff's Complaint.

6. Defendant admits that Plaintiff, Lucille Dumas, was arrested for DUI-OVI and found to have drugs in her possession, along with a credit card and identification not belonging to her. Defendant further denies the remainder of the allegations in paragraph 8 of Plaintiff's Complaint.

7. Defendant admits to some occasions for which Madeline Chappell was written up for being tardy. Defendant further admits to a few insubordination write-ups for asserting her viewpoint as a 19 year Corrections Officer. Defendant further admits that all of her yearly reviews were positive. Defendant further denies the remainder of the allegations in paragraph 28 of Plaintiff's Complaint.

8. Defendant denies the truth of the allegations set forth in paragraphs 29-31 of Plaintiff's Complaint. Defendant further states that any alleged injuries to Plaintiff were as a result of Plaintiff's anger over her arrest for DUI-OVI, anger that Defendant found drugs in Plaintiff's possession, thereby increasing the charges against her, and enraged when Defendant found a credit card and male's driver's license, not belonging to Plaintiff, and confiscated these items on suspicion of fraud. Defendant further states that Plaintiff was the aggressor and started the alleged incident by pulling Defendant's hair and violently attacking her, such that any alleged injuries to Plaintiff were a result of reasonable and necessary force based on the Plaintiff's actions.

9. Defendant denies the truth of the allegations set forth in paragraphs 40-43 of Plaintiff's Complaint and in further answering states that she has been married twice to African Americans, is currently married to an African American, has both African American children and African American step-children, and would never discriminate by race against any biological person least of all an African-American.

10. Defendant denies the truth of the allegations set forth in paragraphs 47-48 of Plaintiff's Complaint and in further answering states that Plaintiff was the aggressor, that Plaintiff spit on Defendant, that Plaintiff pulled Defendant's hair attempting to wrestle Defendant onto the ground, and that any alleged injuries to Plaintiff were a result of the course of conduct by a an individual with a prior criminal record, including multiple arrests, and who knew without question the proper procedures during the booking process. It was the Plaintiff who chose to initiate an attack on an experienced Corrections Officer who was simply trying to do her job and attempting to prevent serious injury to herself, the other on duty and the Plaintiff.

11. Defendant denies the truth of the allegations set forth in paragraph 51 of Plaintiff's Complaint, and in further answering states that civilized society inherently requires that a criminal detainee, such as Plaintiff, not initiate an attack on a Corrections Officer, that a criminal detainee, such as Plaintiff, not shout hateful, racial epithets towards a Corrections Officer, and that a criminal detainee, such as Plaintiff, not spit on a Corrections Officer who is trying to do her job of 19 years.

12. Defendant denies the truth of the allegations set forth in paragraphs 60-61 of Plaintiff's Complaint, but in further answering states that if found liable, Defendant is

entitled to contribution and indemnification by Defendant Cuyahoga County for any liability and/or damages awarded.

### AFFIRMATIVE DEFENSES

13. Plaintiff's Complaint fails to state a claim against this answering Defendant upon which relief can be granted.

14. No act or omission alleged in the Complaint was a direct or proximate cause of Plaintiff's injuries and/or damages.

15. Plaintiff is not entitled to the type of relief demanded.

16. No alleged act or omission of this answering Defendant was a proximate cause of Plaintiff's injuries and/or damages.

17. Plaintiff's Complaint is barred or proportionately reduced by Plaintiff's own contributory and/or comparative negligence.

18. Plaintiff with full knowledge and understanding of the circumstances when arrested and being booked voluntarily assumed any and all risks inherent therein in the matter set forth in Plaintiff's Complaint, knew or should have known of the risks associated therewith, and therefore Plaintiff's Complaint is barred or proportionately reduced by Plaintiff's own assumption of a known risk.

19. This answering Defendant is entitled to contribution and indemnification by Defendant Cuyahoga County.

20. Plaintiff's Complaint is barred or proportionately reduced by this answering Defendant's right to contribution and indemnification by Defendant Cuyahoga County.

21. Defendant Cuyahoga County is liable to this answering Defendant for all claims asserted against her, and as such, Defendant is entitled to contribution and indemnification from Defendant Cuyahoga County in an amount equal to any judgment rendered against her.

22. Plaintiff has waived the right to assert the claims set forth in the Complaint by Plaintiff's own conduct.

23. Plaintiff's alleged injuries and damages are caused or contributed to by the independent unforeseeable, intervening or superseding negligence, acts or failures to act of others over whom this answering Defendant had no control, no right to control, and no assumed liability for.

24. Plaintiff's own conduct was the sole legal cause of alleged injuries and/or damages, or which contributed to some degree to any alleged injuries and/or damages Plaintiff may have sustained, and such conduct should either bar Plaintiff's recovery, or the combined conduct and right to indemnification of Plaintiff and this answering Defendant and Defendant Cuyahoga County should be apportioned to determine the amount of damages, if any at all, owed to Plaintiff by this answering Defendant and Defendant Cuyahoga County.

25. As a criminal detainee, Plaintiff attacking a Corrections Officer over the fact of her arrest for DUI-OVI, being in possession of drugs, and being in false possession of another's identification, was the sole and proximate cause of all injuries alleged to have been caused to Plaintiff.

26. As a prior criminal detainee, based on prior arrests Plaintiff knowingly failed to cooperate with standard booking procedures, knew that spitting on a Corrections

5

Officer is a vile and defiant act, knew that attacking a Corrections Officer was illegal and improper, and knew that any alleged injuries were wholly and rightfully attributable to Plaintiff's own conduct and/or contributory negligence.

27. Plaintiff was not discriminated against on the basis of race, as Defendant has been married twice to African Americans, is currently married to an African American, has biological African American children, has African American step children, and would never discriminate against anyone based on race.

28. In the interest of brevity and judicial economy, this answering Defendant incorporates herein by reference as if fully rewritten each and every affirmative defense available to it pursuant to the Ohio Rules of Civil Procedure and, further, specifically reserves the right to amend its answer hereto should the need thereof arise, including as discovery would warrant.

WHEREFORE, having fully answered, Defendant, Madeline Chappell, respectfully requests this honorable Court dismiss Plaintiff's Complaint against her, with prejudice, that Plaintiff be required to pay Defendant's attorney fees and costs and such other relief to which she might be entitled.

### CROSS-CLAIM FOR CONTRIBUTION AND INDEMNIFICATION

Now comes Defendant, Madeline Chappell, by and through counsel, and for her Cross-claim for indemnification and/or contribution against Defendant Cuyahoga County, respectfully states as follows:

1. The allegations of Plaintiff's Complaint are incorporated by reference, as if fully rewritten and set out herein, not for the purpose of admitting the same, but solely to set forth the basis of this Cross-Claim.

2. This answering Defendant re-alleges each and every admission, denial, for want of knowledge, averment, and affirmative defense set forth in Paragraphs 1-28 of its Answer as if fully rewritten herein.

3. If this answering Defendant is held liable to Plaintiff for any or all of the damages claimed in Plaintiff's Complaint, which liability is hereby expressly and specifically denied, Defendant is entitled to be indemnified by Defendant Cuyahoga County to the extent, and for the full amount, of any judgment rendered in favor of Plaintiff, and for this Defendant's attorneys' fees, costs, and expenses incurred herein.

4. If this Defendant is determined to be liable in tort to Plaintiff, such liability being expressly denied, Defendant Cuyahoga County is also liable in tort to the Plaintiff, and this Defendant is entitled to contribution from Defendant Cuyahoga County for any amount this Defendant is required to pay in excess of adjudged proportionate liability, if any.

WHEREFORE, this answering Defendant/Cross-Claimant, Madeline Chappell, hereby prays for judgment against co-Defendant Cuyahoga County on this Cross-Claim for indemnification and/or contribution, and to recover from co-Defendant Cuyahoga County for any amount recovered by the Plaintiff from this answering Defendant, and an award to this Defendant of its attorneys' fees, costs, and expenses incurred herein. Defendant/Cross-Claimant, Madeline Chappell, further prays for any and all additional relief which this Court deems just and equitable.

**COUNTERCLAIM FOR WRONGFUL DISCHARGE**

Now comes this answering Defendant, Madeline Chappell, by and through counsel, and for her Counterclaim against co-Defendant Cuyahoga County for wrongful discharge, respectfully states as follows:

1. The allegations of Plaintiff's Complaint are incorporated by reference, as if fully rewritten and set out herein, not for the purpose of admitting the same, but solely to set forth the basis of this Counterclaim.

2. This answering Defendant re-alleges each and every admission, denial, for want of knowledge, averment, and affirmative defenses set forth in Paragraphs 1-28 of its Answer as if fully rewritten herein.

3. This answering Defendant incorporates by reference, as if fully rewritten and set out herein, the averments set forth in Paragraphs 1-4 of Defendant's Cross-claim in this matter.

4. This answering Defendant, Madeline Chappell, began employment as a Corrections Officer for the Cuyahoga County Sheriff's Office on or about 1993.

5. Madeline Chappell was discharged, and her employment as a Corrections Officer for the Cuyahoga County Sheriff's Office terminated, on or about March, 2015.

6. Employed as a Corrections Officer for the Cuyahoga County Sheriff's Office, Madeline Chappell was promoted and obtained the rank of Corporal (Cpl.), the same rank held at the time of her discharge and termination from employment as a Corrections Officer for the Cuyahoga County Sheriff's Office.

7. On or about 7:00 p.m. on the evening of January 13, 2015, Cpl. Madeline Chappell began her scheduled work shift as Shift Supervisor at the City of Euclid jail, which ended in the early morning of January 14, 2015.

8. On or about January 13 and 14, 2015, operational jurisdiction over the City of Euclid Police Department jail was vested in the Cuyahoga County Sheriff's Office, thereby creating "The Euclid Jail Annex," such that the Cuyahoga County Sheriff's Office, and not the City of Euclid, had operational jurisdiction over the jail and the handling of prisoners once they come into the booking and/or intake area for processing following an arrest.

9. On or about the evening and/or early morning of January 13 and 14, 2015, respectively, City of Euclid Police Department Sergeant (Sgt.) Craig Murowsky arrested Plaintiff, Lucille Dumas, while on duty patrolling the roads as a Field Supervisor, and brought her into the City of Euclid jail booking and/or intake area for subsequent processing for DUI-OVI.

10. When Plaintiff was brought in for arrest processing, all or some of Cuyahoga County Corrections Officers Delonte Brown, Cheryl Mott, Phillip Robinson, and McArthur Williams were present in the booking and intake area with Cpl. Chappell and Sgt. Murowsky.

11. Pursuant to the booking procedure Plaintiff Lucille Dumas was properly searched and found to be in illegal possession of drugs, which increased her charges and potential subsequent punishment.

9

12. While being fingerprinted by Officer Cheryl Mott Plaintiff became verbally combative and placed in a chair in front of a desk, behind which was positioned Cpl. Chappell.

13. Seated in front of the desk of Cpl. Chappell, Plaintiff continued to yell and scream racial slurs and epithets at Defendant.

14. Plaintiff became exceedingly angry when (and pursuant to procedure) Cpl. Chappell searched Plaintiff's belongings and found her to be in possession of an identification card and debit card of an unrelated male thereby suspecting fraud or identity theft. Plaintiff's conduct escalated to a continuous verbal assault upon Cpl. Chappell as she confiscated the identification card and debit card belonging to an unrelated male.

15. As Plaintiff's conduct and behavior became more agitated, combative and egregious, Cpl. Chappell stood up to secure Plaintiff in a proximate jail cell.

16. Upon Defendant deciding to secure Plaintiff in the jail cell referred to as the 'drunk tank,' Plaintiff suddenly leapt from her chair, kicking it out of the way, and lunged toward the officers behind the intake area desks in a threatening manner.

17. Corrections Officer Mott first engaged the Plaintiff to restrain her.

18. Defendant Chappell, Mott's Supervisor, responded procedurally to assist Mott by walking from behind her desk to reasonably restrain the Plaintiff.

19. Defendant successfully separated Mott from the Plaintiff, whom Defendant continued to try to restrain.

20. Use of force by a Corrections Officer against an inmate or detainee is subject to compliance with the Cuyahoga County Sheriff's Department Correction Officers Manual section 3.27 which states in pertinent part that a Corrections Officer may apply

physical force to an inmate and unless and only unless and to the degree that is reasonably necessary when such force is due to any of the following :

    a. Self-defense of oneself, other staff, visitor's or inmates;

    b. To prevent an escape;

    c. To prevent injury to another person or property;

    d. To quell a disturbance; or

    e. When an inmate exercises physical resistance to a lawful order. (See Plaintiff Exhibit: "A.")

Additionally, the manual states that use of physical force is based on the "reasonable perception on the part of the officer(s) that he/she or another person was in danger of death or serious bodily harm." (Exhibit: "A").

21. There is no dispute that Plaintiff jumped Defendant first as part of an attack on both Defendant and Officer Mott. At the time of the attack Plaintiff was also under the influence of alcohol, and had additional drugs in her possession.

22. Defendant used procedurally reasonable efforts to restrain Plaintiff after being jumped and thereafter when Plaintiff and Defendant were in locked up with each other and during the incident there elements of punching, shoving, wrestling and hair pulling took place.

23. While struggling to restrain Plaintiff, Defendant asked for pepper spray to be brought in by a Corrections Officer.

24. Once pepper spray was brought in, Cpl. Chappell defended herself from Plaintiff's ongoing kicking, spitting and verbal assaults with a short three (3) second burst of pepper spray.

11

25. While Defendant sprayed Plaintiff, Sgt. Murowsky retrieved a restraint chair in light of plaintiff's heightened state of agitation and combativeness.

26. Plaintiff was placed in the restraint chair, where Cpl. Chappell filled a small plastic Tupperware-type container with an amount of water sufficient to rinse such a short burst of pepper spray from Plaintiff's face, instead of using a hose.

27. Once Cpl. Chappell lifted Plaintiff's head by the hair to cleanse her face of pepper spray, Plaintiff assaulted Cpl. Chappell by spitting on her from the restraint chair.

28. The Cuyahoga County Sheriff's Office has no adopted written policy or other training procedure in place for the intake of arrestees in the Euclid Annex.

29. The Cuyahoga County Sheriff's Office has no adopted written policy or other training procedure in place for cleaning up a prisoner after they are pepper sprayed.

30. At all times relevant, Cpl. Chappell implemented the County's existing policies and procedures to the circumstances then there existing.

31. Whereas Cuyahoga County facilities have a tactical team to call when there is an inmate in need of restraint, the Euclid Annex does not have any backup.

32. At all times relevant, Cpl. Chappell was the only Cuyahoga County Sheriff's Office Supervisor present.

33. At all times relevant, the Euclid Annex was short-staffed, no additional backup was provided and no County training was provided.

34. At all times relevant, the City of Euclid Police Department officers were expressly not permitted to assist in the event of an altercation with a detainee.

35. The Cuyahoga County Sheriff's Office has no adopted written policy or other training procedures limiting male Corrections Officers from helping other Corrections Officers based on gender.

36. At all times relevant, no other present male Corrections Officer assisted either Officer Mott or Cpl. Chappell, both female.

37. Absent adopted written policies and other training procedures to the contrary, pursuant to the Cuyahoga County Sheriff's Department Employee Manual ("Employee Manual"), "[t]he basic objective of inmate supervision is life safety, the maintenance of order, and the prevention of escape," and "[i]nmates must comply with rules and regulations. Their expected behavior is outlined in the Inmate Handbook issued to them at booking."

38. Pursuant to the Employee Manual, toward maintaining order and inmate discipline, ". . . each situation is different and the response of the officer should be based on [among other things], experience and good common sense."

39. Pursuant to the Employee Manual, in handling emergency situations, including but not limited to fights, "[w]hen an emergency situation occurs, immediate steps must be taken by the . . . officer or any other Corrections Center personnel . . ."

40. The Employee Manual further enumerates the initial steps to be taken in handling emergency situations as including: the activation of the Man-Down unit (expected to be an automatic response in every case); isolating the situation to maintain control by ordering inmates into lock-up; responding according to the nature of the emergency by attempting to break up the fight using caution and discretion in attempting to separate the combatants; utilizing all equipment at the officer's disposal; employing whatever means

13

are necessary to intervene if serious physical harm appears to be imminent; and once the supervisor arrives, they will take control of the situation.

41. Pursuant to the Employee Manual, employees shall apply physical force if, and only to the degree that it is reasonably necessary for reasons that include: self-defense of oneself and other staff; to prevent injury to another person or property; to quell a disturbance; and when an inmate exercises physical resistance to a lawful order.

42. Pursuant to the Employee Manual, "in every instance where force is used, . . . [e]ach case of use of force will be evaluated on its own merits" considering such elements of fact as the degree of force or amount of resistance used by the inmate, the reasonable perception on the part of the officer(s) that he/she or another person was in danger of serious bodily harm, and the means of force available to the officers.

43. Pursuant to the Employee Manual, "[t]he best guideline should be: only that reasonable force necessary to gain or regain control of the situation must be used…"

44. Pursuant to the Employee Manual, each position of authority must answer to the next highest rank in all matters concerning the duties of the job, and officers must comply with all lawful orders given by their supervisors.

45. Pursuant to the Employee Manual, in the event of conflict between orders, once the supervisor issuing the latest order is apprised of the conflict, the officer must comply with the most recent order given.

46. Pursuant to the Employee Manual, the line of authority begins with the Director of Corrections and proceeds sequentially down through the Warden, Associate Wardens, Facility Services Manager and Chief of Security and Health Care Managers,

Shift Supervisor or Specialty Area Supervisor (Sergeants), Floor Supervisor (Corporals), and Corrections Officers.

47. Pursuant to the Employee Manual, "[i]t is the policy of the Cuyahoga County Sheriff's Department to protect the rights of employees and enforce the high standards of professional conduct," such that "all employees will conduct themselves according to the Code of Ethics . . . Employees who . . . violate these standards will be subject to corrective action . . ."

48. Pursuant to the Employee Manual Code of Ethics, among the enumerated conduct employees shall not do are listed: violate or disobey established rules, regulations or lawful orders from a supervisor; through negligence or neglect endanger the wellbeing of staff or others.

49. Pursuant to the Employee Manual Code of Ethics, among the enumerated conduct employees must comply with are listed: all policies, procedures, rules, and objectives; a prohibition on the use of abusive or obscene language, threats and coercion; employees will not be subjected to sexual, emotional or physical abuse or language or the use of unnecessary levels of physical force; enforcement of an attitude of respect for and protection of employee rights; and assurance of safety and security as part of effective job performance such that employees remain alert, aware and responsible for acts that may jeopardize the security and welfare of staff.

50. Pursuant to the Employee Manual, and in addition to the Code of Ethics, additional enumerated conduct includes prohibiting all employees assigned to work in secured confines from: performing willful acts or making false statements with the intent

15

to subvert the department or adversely affect its operation; falsifying reports, and inventing stories or signing another name to a report.

51. At all times relevant, Defendant's conduct was appropriate, in self-defense proportionate to the circumstances then there existing, and in procedural conformity with her assigned duties based on experience and good common sense.

52. At all times relevant, where Defendant applied force, she did so appropriately, in self-defense proportionate to the circumstances then there existing, in procedural conformity with her assigned duties based on experience and good common sense, and at no time was applied excessively.

53. At all times relevant, the use of pepper-spray was applied appropriately, in self-defense proportionate to the circumstances then there existing, in procedural conformity with her assigned duties based on experience and good common sense, and at no time was applied excessively

54. In violation of adopted written policies, procedures, and Code of Ethics requirements, Corrections Officers Delonte Brown, Phillip Robinson, and McArthur Williams, all male, failed to come to the aid of Cpl. Chappell, a female.

55. In violation of Cuyahoga County policies and procedures, at all times relevant "The Euclid Jail Annex" was understaffed, with no adopted written policies or other training procedures in place to direct the course of action to be undertaken in the circumstances then there existing.

56. At all times relevant, Cuyahoga County remains responsible for the actions of its officers.

16

57. At all times relevant, by understaffing the Euclid Jail Annex, and not having any adopted written policies or other training procedures to direct its operation, Cuyahoga County negligently supervised Defendant.

58. Through a nineteen year career, Defendant Chappell was promoted in rank to Corporal, from where she started, with disciplinary write-ups for that number of years well within the normal rate and only for such conduct as being tardy and minor insubordination, but never for excessive force.

59. In violation of the Employee Manual, the Defendant's alleged use of force was not evaluated on its own merits, but rather in aggregate combination with a normal rate of recorded disciplinary write-ups, spanning nineteen years of occasional infractions, such as being tardy and minor insubordination.

60. As a direct and proximate result of Cuyahoga County's negligence in protecting Cpl. Chappell, having a Sergeant on duty in the Euclid Jail Annex at all times and the (in)actions of its other officers in further violation of the adopted written Employee Manual, Defendant was suspended without pay, wrongfully discharged without just cause and procedural due process, suffered physical manifestations of depression and emotional distress, faced trial on multiple criminal charges and counts, and entered a plea agreement to charges of assault and to no longer seek employment in the occupational field of law enforcement, just to have her pension released.

61. The conduct of Cuyahoga County was reprehensible and outrageous.

62. Defendant did not commit any conduct of a serious and substantial nature that a reasonably prudent person would find to be just or good cause for discharge and termination of her employment.

17

63. Cuyahoga County unilaterally and without cause, wrongfully discharged and terminated Defendant's employment in violation of its own adopted procedural due process rights and regulations regarding the manner of disciplining and/or discharging and terminating an employee, and otherwise acted arbitrarily and capriciously in discharging the Defendant.

64. Cuyahoga County's discharge and termination of Defendant's employment was wrongful as the County manufactured a just or good cause for termination with an intention to wrongfully deprive Defendant of her just compensation and procedural due process, and to wrongfully divest her of her pension rights.

65. In discharging and terminating Defendant's employment, Cuyahoga County, without any just or good cause, breached its employment contract, Employee Manual policies and procedures, and agreements and understandings between Defendant and the County.

66. Cuyahoga County's purported just or good cause for discharge and termination of employment has been manufactured in bad faith, as no such cause exists.

67. As a result of the wrongful and bad faith discharge and termination by Cuyahoga County, Defendant has suffered, and will continue to suffer, damages and physical and mental injuries in an amount to be determined at trial.

68. Cuyahoga County's conduct was willful, malicious and wanton, entitling Defendant to punitive and exemplary damages.

WHEREFORE, this answering Defendant/Counterclaimant prays for judgment against Cuyahoga County and for the following relief:

   a. A declaration of Cuyahoga County's unlawful and wrongful discharge and termination of Defendant's employment;

   b. Compensatory damages in an amount to be determined by this Court;

   c. Punitive damages in an amount to be determined by this Court;

   d. Back pay in an amount to be determined by this Court;

   e. Front pay in an amount to be determined by this Court;

   f. Reasonable attorney's fees and all costs of this Court;

   g. Reinstatement to her former position and rank of employment;

   h. Such other general and special further relief as this Court, in the exercise of its jurisdiction, deems just, equitable, reasonable, necessary and/or appropriate, to which Plaintiffs are properly entitled;

## JURY DEMAND

Pursuant to Civil Rule 38, Defendant demands a trial by jury with the maximum number of jurors permitted by law.

Respectfully Submitted,

  /s/ Russell D. Kornblut
Russell D. Kornblut (0032818)
FRANK & KORNBLUT, LLC
30325 Bainbridge Road
Suite A-1
Solon, OH  44139
(440) 519-9818 (office)
(216) 570-4871 (cell)
Email:  rkornblut@yahoo.com

*Attorney for Defendant-Counter Claimant Madeline Chappell*

19

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served pursuant to the Court's electronic filing system this 9th day of March, 2016 on:

       /s/ Russell D. Kornblut
      Russell D. Kornblut (0032818)
      FRANK & KORNBLUT, LLC

*Attorney for Defendant-Counter Claimant Madeline Chappell*

THE CHANDRA LAW FIRM, LLC
Subodh Chandra, Esq.
Peter Pattakos, Esq.
Ashlie Case Sletvold, Esq.
1265 W. 6th Street, Suite 400
Cleveland, OH 44113-1326
Subodh.Chandra@ChandraLaw.com
Peter.Pattakos@ChandraLaw.com
Ashlie.Pattakos@ChandraLaw.com
Attorneys for Plaintiff Lucille Dumas

And

Christopher Thomarios, Esq.
820 W. Superior Ave., Suite 840
Cleveland, OH 44113
christopher@cgt-law.com
Attorneys for Plaintiff Lucille Dumas

And

Barbara R. Marburger, Esq.
Assistant Cuyahoga County Prosecutor
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, OH 44113
Attorneys for Defendant Cuyahoga County, Ohio