IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LUCILLE DUMAS<br>15634 Kipling Avenue, Apt. 2<br>Cleveland, Ohio 44110<br><br>              Plaintiff,<br>   vs.<br><br>MADELINE CHAPPELL<br>In both her official and personal capacities<br>26241 Lakeshore Boulevard #1953<br>Euclid, Ohio 44132<br><br>DELONTE BROWN<br>In his personal capacity,<br>c/o Cuyahoga County Sheriff<br>1215 West 3rd Street<br>Cleveland, Ohio 44113<br><br>CHERYL MOTT<br>In her personal capacity,<br>c/o Cuyahoga County Sheriff<br>1215 West 3rd Street<br>Cleveland, Ohio 44113<br><br>MACARTHUR WILLIAMS<br>In both his official and personal capacities,<br>c/o Cuyahoga County Sheriff<br>1215 West 3rd Street<br>Cleveland, Ohio 44113 | Case No. 1:16-cv-00081<br><br>Judge Donald C. Nugent<br><br>Magistrate Judge Jonathan D. Greenberg |

| | |
|---|---|
| CRAIG MUROWSKY<br>In his personal capacity,<br>c/o Euclid Police Department<br>545 East 222nd Street<br>Euclid, OH 44123<br><br>     and<br><br>CUYAHOGA COUNTY<br>1215 West 3rd Street<br>Cleveland, Ohio 44113<br><br>     Defendants. | |

**FIRST AMENDED COMPLAINT WITH JURY DEMAND**

## I.
### NATURE OF THE ACTION

1.      This is a civil-rights action brought under 42 U.S.C. §§ 1983 and 1985(3). It also asserts state-law causes of action. Plaintiff Lucille Dumas alleges that the named officers violated the Fourth and Fourteenth Amendments of the United States Constitution by using excessive force against her without just cause and causing her physical and emotional injuries and distress.

2.      While Defendant Cuyahoga County Corrections Officer Corporal Madeline Chappell was acting in the scope of her employment with the Cuyahoga County Sheriff's Department and under color of state law, she unlawfully attacked Ms. Dumas, who was being booked on January 14, 2015 at the Euclid City Jail. This unreasonable seizure directly and proximately caused Ms. Dumas's injuries. The Cuyahoga County Prosecutor's Office indicted Ms. Chappell on charges of kidnapping (R.C. 2905.10(A)(3)), tampering with records (R.C. 2913.42(A)(1) and 2921.12(A)(1)), assault (R.C. 2903.13(A), and unlawful restraint (2905.03(A)). Chappell pled guilty to the assault charge on December 9, 2015, and as part of her plea agreement, she resigned her employment as a corrections officer and agreed that she would not seek further employment in

law enforcement.

3.      Defendants Delonte Brown, Cheryl Mott, and Macarthur Williams are Cuyahoga

County Sheriff Corrections Officers who were on duty at the time of Defendant Chappell's

attack on Dumas. Brown's, Mott's, and Williams' deliberate indifference to the attack was a

direct and proximate cause of Dumas's injuries.

4.      Defendant Craig Murowksy is a Sergeant at the Euclid Police Department and brought

Ms. Dumas to the County Annex. Murowsky witnessed Chapell's initial attack on Dumas.

Murowsky's deliberate indifference to the attack was a direct and proximate cause of Dumas's

injuries.

5.      Defendant Cuyahoga County failed to train officers on how to properly use pepper foam

and their duty to intervene to protect inmates from unnecessary harm.  The County's deliberate

indifference to the rights of its inhabitants by adopting a policy, custom, or practice of failing to

adequately train its officers was a direct and proximate cause of Dumas's injuries.

## II.
### PARTIES

6.      Plaintiff Lucille Dumas resides in Cleveland, Ohio.

7.      Defendants Madeline Chappell, Delonte Brown, Cheryl Mott, and Macarthur Williams

are or were Corrections Officers Corporal for the Cuyahoga County Sheriff's Department. At all

times relevant to the allegations in this Complaint they were acting in their capacity as

Corrections Officers employed by the Cuyahoga County Sheriff's Department and were acting

under color of state law.

8.      Defendant Craig Murowsky is or was a Sergeant at the City of Euclid Police Department.

At all times relevant to the allegations in this Complaint he was acting in his capacity as a

Sergeant employed by the City of Euclid Police Department and was acting under color of state law.

9.     Defendant Cuyahoga County is responsible for its officers' actions as alleged in this Complaint, due to its failure to train officers on how to properly use pepper foam and their duty to intervene to protect inmates from unnecessary harm.

### III.
### JURISDICTION AND VENUE

10.     Jurisdiction over federal claims under 42 U.S.C. §§ 1983 and 1988, which provides for attorney and expert fees for vindication of civil-rights claims, is asserted under 28 U.S.C. §§ 1331 and 1343.

11.     Jurisdiction over state claims is asserted under 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over the Defendant and venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims took place within the Court's jurisdiction.

### IV.
### FACTUAL BACKGROUND

**A.     Chappell's attack on Dumas**

13.     On or about January 14, 2015, Lucille Dumas was arrested in connection with a traffic stop and brought to the Cuyahoga County Jail Annex of the Euclid City Jail for booking by Sergeant Murowsky. Then-Corporal Chappell was on duty at the booking desk at the time.

14.     According to a written report by Detective Phil Robinson of the Cuyahoga County Sheriff's Department, who reviewed jail surveillance video and interviewed several eyewitnesses, and the depositions of Officers Mott and Brown, Chappell's attack on Dumas occurred as follows:

15.     Ms. Dumas was brought into the station by Euclid Police Sergeant Murowsky. After

completing a routine breathalyzer test, Officer Mott patted Dumas down. And Corporal Chappell began to ask Dumas standard booking questions.

16.    During the booking process, Chappell and Dumas became engaged in a "verbal exchange" that "began to get animated."

17.    Detective Robinson's report states that Chappell then "ran around the desk and punched Inmate Dumas in her face with her right hand … ." According to County Corrections Officer Macarthur Williams, an eyewitness to the incident, "when Corporal Chappell slammed [a] book down on the desk and g[o]t up and beg[a]n to come around the desk[,] that's when Ms. Dumas stood up and took a defensive stance to protect herself."

18.    According to Detective Robinson's report, "after the [first] punch by Corporal Chappell, Officer Mott disengaged from holding Inmate Dumas and Corporal Chappell grabbed inmate Dumas and began to wrestle with her and eventually threw her to the ground. … The [surveillance] video also shows Corporal Chappell administering OC [oleoresin capsicum] pepper spray to the face of Inmate Dumas with several other officers affected by the deployment of the spray," including Officer Mott.  According to Dumas, "she was kicked by Corporal Chappell while on the ground." None of the officers present—including County Officers Mott, Williams, Brown, and Euclid Police Sergeant Murowsky—intervened to protect Dumas from Chapell, even though they knew that Chappell had no legitimate reason to attack Dumas and that Dumas was only acting in self-defense toward Chappell.

19.    As Dumas struggled to breathe with the pepper foam, Sergeant Murowsky brought over a restraint chair and left the room. Detective Robinson's report further states that, "the corrections staff was able to handcuff Inmate Dumas and secure her in a corrections approved restraint chair … . While attempting to move Inmate Dumas from the floor to the restraint chair, the video shows Corporal Chappell lifting Inmate Dumas[, who was handcuffed at the time,] off the floor

by her hair then slamming her into the restraint chair." Chappell then, along with Corrections

Officer Delonte Brown and Officer Williams, "strap[ped] Inmate Dumas to the restraint chair."

20.     In his deposition, Officer Brown stated that "at this time the pepper foam is starting to

take effect so [Dumas's] legs are kicking, going everywhere so I secure her legs. I tell my partner

[Officer Williams] to strap down her weight so she can't move. And as we're doing that, Ms.

Chappell struck Ms. Dumas in the face three times while her hands were still handcuffed behind

her back."

21.     According to Officer Robinson's report, after Dumas was secured to the restraint chair,

"Chappell adjusted her hair, looked around, then struck inmate Dumas with her left hand."

Officer Brown reported that Chappell "struck Ms. Dumas 3 times in the face and while being

punched Ms. Dumas was defenseless and was not able to protect herself." Officer Williams

reported that, "while [Ms. Dumas was] in the restraint chair he saw Corporal Chappell punch

Ms. Dumas 3 times with a closed fist … to her face and that it was full blown strikes … [to] the

eye and cheek." In her deposition, Officer Mott stated that Chappell stood above Dumas and

"punched her in the face." None of the officers intervened.

22.     Detective Robinson's report further states that Chappell "wheel[ed Ms. Dumas in the]

restraint chair towards the back of the room … but Officer Brown intervened and took control of

the restraint chair and pushed Inmate Dumas in to the back room out of camera view. The video

shows … Corporal Chappell entering and exiting the room with a Tupperware style container

handling it as if it was filled up with water and repeating the process no less than two (2) times."

23.     Officer Mott reported that Chappell then "unnecessarily drenched [Ms. Dumas] with

water in an aggressive manner," and then "str[uck] Ms. Dumas in the face with [the]

Tupperware container causing it to break." According to Officer Brown, Chappell "took the

[Tupperware] bowl and hit [Dumas] in the face with it breaking the bowl and splitting it down

the middle." According to Officer Williams, "Chappell took the bucket and slapped Dumas upside the head with a back hand slapping motion[.] [T]his cracked the bucket down the middle[.]  Ms. Dumas was in restraints in the restraint chair at this time."

24.     Officer Brown left the room to grab a water hose. He sought to decontaminate Dumas, who was still suffering from the pepper foam, because he "thought it would be a little more effective than getting splashed with a bucket of water." Chappell, however, ordered him not to use the hose and he and the other officers left Dumas to continue to suffer the effects of the pepper foam. When asked in his deposition about whether or not he could have restrained Chappell from further abusing Dumas, Officer Brown replied "Yeah, I could." Furthermore, he was not physically intimidated by her. Instead, he and the other officers allowed Chappell to continue to abuse Dumas. This amounted to torture. No one sought to adequately care for Ms. Dumas, who was clearly in severe pain from the pepper foam. No one provided adequate medical care.

25.     Officer Brown further reported that, "Corporal Chappell ordered Officer Brown to throw that particular bowl away and repeated the order twice[.] Corporal Chappell placed the bowl in the trash cart … with the Tupperware Bowl never to be seen again."

26.     According to Officer Mott: "All employees working that evening were required to complete a written or typed account of the assault incident. Corporal Chappell read Officer Mott's statement and replied, 'oh hell no you're doing too much.' Corporal Chappell then erased and deleted Officer Mott's typed statement which was approximately one half page long and very detailed and typed in a one line simple statement that depicted untruth and minimized the whole incident between Ms. Dumas and Corporal Chappell. Officer Mott was then ordered to sign the statement that was not authorized by her."

27.     According to Officer Williams, when "Sheriff's Deputies arrived to transport Ms. Dumas

to the Cuyahoga County Jail … a female deputy asked, 'did I miss anything?' and Ms. Dumas replied, 'yes, she tried to kill me,' then Corporal Chappell replied, 'you're fucking right I tried to kill you.'"

28.    Throughout the whole ordeal, none of the officers intervened to stop Chappell from beating, abusing, and torturing Dumas; nor did they report Chappell afterwards to their superiors.

29.    Throughout the whole ordeal, all of the officers knew that Chappell had no legitimate reason to attack Dumas, and that Chappell was using excessive force against Dumas.

30.    All of these statements contained in Detective Robinson's report, as set forth in paragraphs 14–29 above, are true.

31.    Chappell's attack on Dumas caused Dumas to be terrified and fearful. Chappell's attack on Dumas was not provoked by any threat of physical force from Dumas.

32.    Dumas filed a formal grievance with Cuyahoga County about the above-described conduct by mail on July 17, 2015, according to the Cuyahoga County Corrections Center's inmate handbook. Dumas received a written reply to her grievance from Cuyahoga County Assistant Prosecuting Attorney Barbara R. Marburger in which Ms. Marburger stated that "the inmate grievance process … is not applicable to [Ms. Dumas]" and that "Cuyahoga County officials are aware of the incident at the Euclid Jail on January 14, 2015."

**B.    The County's failure to train Officers on foreseeable aspects of their job.**

33.    Cuyahoga County, through its Sheriff's department, had a pattern and practice and a custom and policy of failing to train officers on basic duties of their job, such as their duty to intervene or on how to properly administer and decontaminate a person suffering from the administration of pepper foam.

34.    Given the nature of their job and the fact that certain County Corrections Officers are

provided with pepper foam to use on the job, it is foreseeable that County Corrections Officers would need to know how to use decontaminate inmates from pepper foam. The County, however, provided no training in how to use pepper foam, or in how to properly decontaminate someone suffering pepper foam's debilitating effects. When asked in a deposition about decontaminating a person sprayed with pepper foam, Officer Mott stated that "none of us have been—myself and the two other male officers have … been properly trained for decontamination."

35.     Both Officers Mott and Brown stated in their depositions that the County only provided two weeks of training. Officer Brown stated that training focused on "report writing and some hand-to-hand combat situations and pretty much going into cells and doing cell searches." Officer Mott states that the two-week training consisted "of a class setting and then we had a physical agility and then we had OPATA [Ohio Peace Officer Training Academy] 18 months later." This training program was wholly inadequate.

36.     Furthermore, the County's training program failed to provide the officers with basic information about their job, like their duty to intervene to prevent inmates from suffering unnecessary harm, such as when an officer is engaging in unwarranted and excessive violence toward a person in their custody. When asked about his duty to intervene, Officer Brown stated that he was never trained to intervene and that "at that time I was a newer officer and the training I had was basically to follow orders. A lot of our job is on-the-job training, so I wasn't experienced with that type of situation."

37.     Officer Mott testified in her deposition that she had received training at the Ohio Peace Officer Training Academy on use of force techniques against violent inmates. When asked, however, "what were trained to do when it's one of your colleagues that is engaged in the violent conduct?" Officer Mott responded that she "Never had that [training]."

## C.      Plaintiff's damages

38.      Since having been attacked by Chappell, Dumas's ability to perform and enjoy her usual activities has been impaired. She has suffered severe emotional distress, including depression, sleeplessness, and related emotional anxiety as a result of her mistreatment. If she sees a police officer, she has particular trouble sleeping that night. Her mental and emotional injuries are due to being terrorized by the attack that Defendant Chappell perpetrated and the County failed to prevent.

39.      As a direct and proximate result of Defendants' intentional and reckless acts, Dumas sustained severe mental and physical pain and suffering and injury in an amount to be determined at trial.

40.      Dumas is entitled to compensatory damages for the harms inflicted upon her. And she is entitled to punitive damages for the unconscionable conduct she was forced to endure at the hands of Chappell, as well as attorneys' fees and costs.

## V.
### CLAIMS

### Claim 1
### Excessive use of force under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983

### (against Chappell)

41.      Plaintiff incorporates all previous allegations by reference.

42.      Defendant Chappell used excessive force against Dumas to terrorize her. A reasonable officer would not have initiated the seizure or used the kind of force that Chappell used against Dumas. Chappell attacked Dumas without probable cause or reasonable need to do so. She used a grossly unnecessary amount of force to detain Dumas, which was shocking to a person of

ordinary conscience and unjustifiable under the circumstances. The amount of force used to accomplish the detention was clearly excessive and objectively unreasonable under the Fourth Amendment. All of these actions caused damage to Dumas.

43.     The County knew that its negligent and reckless training, supervision, discipline, staffing, and retention of Chappell would lead to this civil-rights violation.

44.     As a direct and proximate result of Defendant Chappell's unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard of Dumas's rights, Dumas suffered and will continue to suffer economic and non-economic damages for which Chappell is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

45.     Dumas is entitled to punitive damages based on Defendant Chappel's unlawful conduct.

**Claim 2**
**Failure to intervene under the Fourth and Fourteenth Amendments**
**and 42 U.S.C. § 1983**

**(against Murowsky, Mott, Williams, and Brown)**

46.     Plaintiff incorporates all previous allegations by reference.

47.     Defendants Murowsky, Mott, Williams, and Brown failed to intervene to protect Dumas from Defendant Chappell's excessive force.

48.     Throughout Chappell's attack on Dumas, Defendants Murowsky, Brown, Mott, and Williams failed to take *any* possible action that would have stopped the attack, such as to physically restrain Chappell and prohibit her from contact with Dumas. This failure was unreasonable and constituted deliberate indifference to Dumas's clearly established right to be free from excessive force, and actually and proximately caused the violation of Dumas's constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

49.     As a direct and proximate result of Defendants' unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard of Dumas's rights, Dumas suffered and will continue to suffer economic and non-economic damages for which Chappell and the County are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

50.     Dumas is entitled to punitive damages based on Defendants' unlawful conduct.

### Claim 3
### Failure to provide adequate medical care under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983

### (against Mott, Williams, and Brown)

51.     Plaintiff incorporates all previous allegations by reference.

52.     Defendants Chappell, Mott, Williams, and Brown failed to provide adequate medical care to Dumas after she was sprayed with pepper foam. A reasonable officer would not have failed to properly decontaminate Dumas while she suffered the effects of pepper foam. By placing and leaving her in the restraint chair while Chappell continued to beat her, the Officers exacerbated her medical needs. This deliberate indifference on their behalf was clearly excessive and objectively unreasonable under the Fourth Amendment.

53.     As a direct and proximate result of Defendants' unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard of Dumas's rights, Dumas suffered and will continue to suffer economic and non-economic damages for which Chappell and the County are liable, including, but not limited to, mental, emotional, and physical pain and suffering.

54.     Dumas is entitled to punitive damages based on Defendants' unlawful conduct.

**Claim 4**
**Failure to train Officers under the Fourth and Fourteenth Amendments**
**and 42 U.S.C. § 1983**

**(against Cuyahoga County)**

55.      Plaintiff incorporates all previous allegations by reference.

56.      Defendant Cuyahoga County failed to train officers to intervene against fellow officers to prevent inmate abuse, and how to use pepper foam, a foreseeable tool at their job. As a result, none of the Officers knew their proper roles and duties, nor the proper procedure for decontaminating a person suffering from pepper foam.

57.      As a direct and proximate result of the County's deliberate indifference to the rights of its inhabitants by adopting a policy, custom, or practice of failing to adequately train officers, Dumas suffered and will continue to suffer economic and non-economic damages for which the County is liable, including, but not limited to, mental emotional, and physical pain and suffering.

**Claim 5**
**Denial of equal protection under the 14th Amendment and 42 U.S.C. § 1983**

**(against Chappell)**

58.      Plaintiff incorporates the previous allegations by reference.

59.      With purpose or intent to discriminate, acting under color of state law, Defendant Chappell discriminated against Dumas illegally and based on her race. In attacking Dumas as described above, Chappell, who is Caucasian, treated Dumas differently and as less than human because Dumas is black.

60.      Chappell's attack on Dumas was motivated by Dumas's race. Chappell did not attack similarly situated Caucasian inmates, who, like Dumas, presented no reasonable threat of physical force to her, in the way that she attacked Dumas.

61.     Chappell's attack on Dumas led to the deprivation of Dumas's federally protected right to equal protection.

62.     As a direct and proximate result of the unconstitutional denial of equal protection, Dumas has suffered damages for which Chappell is liable.

63.     Throughout Chappell's attack on Dumas, Defendants Brown, Mott, and Williams failed to take possible action that would have stopped the attack, such as to physically restrain Chappell and prohibit her from contact with Dumas. This failure was unreasonable and constituted deliberate indifference to Dumas's clearly established right to equal protection under the law, and actually and proximately caused the violation of Dumas's constitutional rights guaranteed by the Fourteenth Amendment of the United States Constitution.

64.     As a direct and proximate result of Defendants' unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard of Dumas's rights, Dumas suffered and will continue to suffer economic and non-economic damages for which Chappell is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

65.     Dumas is entitled to punitive damages based on Defendants' unlawful conduct.

## Claim 6
## Battery

### (against Chappell)

66.     Plaintiff incorporates the previous allegations by reference.

67.     Defendant Chappell engaged in the above-described actions intending to cause the harmful contact and the harmful contact resulted. Chappell intended to strike Dumas in her face repeatedly, with her closed fist and with a plastic container, and did so while Dumas was completely restrained and defenseless. These offensive touchings were unlawful and unwanted.

68.     As a direct and proximate result of Chappell's unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard of Dumas's rights, Dumas suffered and will continue to suffer economic and non-economic damages for which Chappell is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

69.     Dumas is entitled to punitive damages based on Chappell's unlawful conduct.

70.     Defendant Cuyahoga County, as employer of Chappell, is responsible for her wrongdoing under the doctrine of respondeat superior.

### Claim 7
### Malicious attempt to influence public officials (intimidation) under R.C. 2921.03(A) and (C)

### (against Chappell)

71.     Plaintiff incorporates the previous allegations by reference.

72.     By deleting and replacing Officer Mott's written account of her attack on Dumas with a false account of the event, Defendant Chappell knowingly attempted to use a materially false and fraudulent writing with malicious purpose, in bad faith, and in a wonton and reckless manner, in an attempt to influence and hinder County officials or Prosecutors in the discharge of their duties.

73.     As a direct and proximate result of Chappel's unlawful conduct, prosecutors were hampered in their ability to fully prosecute and hold Chappell accountable for her crimes, and accepted a lesser plea and sentence than was warranted.

74.     As a direct and proximate result of Chappel's unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard of Dumas's rights, Dumas suffered and will continue to suffer economic and non-economic damages for which Chappell is liable, including, but not limited to, mental, emotional, and physical pain and suffering.

75.     Defendant Cuyahoga County, as Chappel's employer, is responsible for her wrongdoing

under the doctrine of respondeat superior.

76.     Chappell's actions violate R.C. 2921.03(A) and subject Chappell and the County to civil liability, including for attorneys' fees, costs, and expenses under R.C. 2921.03(C).

## VI.
### PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A.     Declare that Defendants' acts and conduct constitute violations of the Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. §§ 1983.

B.     Judgment in Plaintiff's favor as to all claims for relief.

C.     Special and general damages in excess of $25,000 to compensate for the injuries Ms. Dumas sustained due to Defendants' conduct including economic and non-economic damages for medical costs, pain, suffering, humiliation, and emotional distress.

D.     Punitive and exemplary damages, pre-judgment interest, post-judgment interest, costs, and other reasonable expenses incurred in maintaining this action, and the reasonable attorneys' fees and costs incurred in maintaining this action.

E.     All other relief in law or equity to which Plaintiff is entitled and that the Court deems equitable, just, or proper.

## VII.
### JURY DEMAND

Plaintiff demands a trial by jury on all issues within this Complaint.

Respectfully submitted,

THE CHANDRA LAW FIRM, LLC

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Peter Pattakos (0082884)
Ashlie Case Sletvold (0079477)
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Peter.Pattakos@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com

and

*(Per consent)*
Christopher Thomarios (0076637)
820 W. Superior Ave., Suite 840
Cleveland, Ohio 44113
216.696.8217 Phone
216.696.9292 Fax
christopher@cgt-law.com

*Attorneys for Plaintiff Lucille Dumas*

### Certificate of Service

I certify that this document was filed using the Court's ECF system, which will send notification to all counsel of record.

/s/ Subodh Chandra
*One of the attorneys for Plaintiff Lucille Dumas*